```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF TEXAS
                          HOUSTON DIVISION
```

JAMES G. MOSES and              §
JEANNE MOSES,                   §
                                §
            Plaintiffs,         §
                                §
v.                              §
                                §    CIVIL ACTION NO. H-06-1350
ZIMMER HOLDINGS, INC.,          §
an Indiana Corp., ZIMMER        §
NAGEL LTD, and ZIMMER           §
NAGEL & ASSOCIATES, INC.,       §
                                §
            Defendants.         §

## MEMORANDUM OPINION AND ORDER OF REMAND

Plaintiffs, James G. Moses and Jeanne Moses, bring this products liability action against defendants, Zimmer Holdings, Inc., Zimmer Nagel Ltd., and Zimmer Nagel & Associates, Inc., for injuries allegedly sustained from a defective artificial hip replacement product.[1] Plaintiffs originally brought their action in the 164th District Court of Harris County, Texas.[2] Defendants removed the case to federal court pursuant to 28 U.S.C. § 1332(a) and § 1441(a).[3]

Pending before the court are Plaintiffs' Motion to Remand and for Costs (Docket Entry No. 15), Defendants' Response in Opposition to Motion to Remand (Docket Entry No. 22), and Plaintiffs' Reply to

---

[1] Plaintiff's Original Petition, attached to Notice of Removal, Docket Entry No. 1.

[2] Id.

[3] Notice of Removal, Docket Entry No. 1.

Defendants' Response to Motion to Remand (Docket Entry No. 26). Defendants have also filed a Motion for Leave to File a Surreply in Opposition to Plaintiffs' Motion to Remand (Docket Entry No. 29), with the actual motion attached. The court **GRANTS** Defendants' Motion for Leave to File a Surreply, and considers the Surreply filed by defendants.

For the reasons explained below, plaintiffs' motion to remand will be granted, but plaintiffs' motion for costs will be denied.

### I. Factual and Procedural Background

Plaintiff's Original Petition alleges the following facts. The defendants, referred to collectively by plaintiffs as "Zimmer," design, manufacture, sell, and distribute orthopedic reconstructive products, including artificial hip replacement products. Plaintiff James Moses received a Zimmer artificial hip replacement in his right hip on April 11, 2000.[4] On June 27, 2004, the Zimmer artificial hip replacement implanted in James Moses' right hip

---

[4]According to plaintiff's petition, the human hip joint consists of two parts: a ball, formed by the top of the thighbone, also known as the femur, which fits into the socket, formed by a portion of the pelvic bone. The ball is surrounded by cartilage, which allows a healthy hip to move smoothly within the socket. Some medical conditions cause degeneration of the hip joint so that hip replacement is required. In one form of surgery, presumably the type received by James Moses, the surgeon inserts a metal cup with a smooth plastic polyethylene lining into the patient's diseased pelvic socket. The plastic lining functions as the cartilage and allows for the smooth movement of the ball portion of the thighbone. The diseased portion of the thighbone is removed and replaced by a metal or ceramic ball mounted onto a metal stem. The metal stem is then fitted into the thighbone, and then placed securely into the pelvic socket.

failed suddenly and without warning, disabling him. The metallic insert on his femur had fractured, necessitating complete removal of the Zimmer artificial hip replacement implant and further surgery. James Moses' right hip was replaced four times in 2004 and 2005 because of Zimmer artificial hip replacement product failures. Zimmer had received numerous reports that patients were having problems because the metal stem portion of Zimmer's artificial hip system was fracturing. Zimmer has since voluntarily recalled the hip implant at issue.[5]

Plaintiffs filed an action against the defendants on March 20, 2006, in Texas state court, and defendants timely removed it to this court on April 19, 2006. In removing the action defendants assert that defendants Zimmer Nagel Ltd. and Zimmer Nagel & Associates, Inc. were improperly joined solely to defeat diversity jurisdiction.[6] Defendants allege that Zimmer Nagel & Associates

---

[5]The copy of Plaintiff's Original Petition filed with the court by defendants as an attachment to their Notice of Removal appears to be incomplete. It ends abruptly after paragraph 21, and asserts only the claim of negligence, while the pleadings indicate that plaintiffs assert negligence, products liability, breach of warranty, and loss of consortium causes of action. See Zimmer Holdings, Inc.'s Amended Answer to Plaintiffs' Original Petition & Request for Disclosures, Docket Entry No. 14, p. 3; Plaintiffs' Reply to Defendants' Response to Motion to Remand, Docket Entry No. 26, unnumbered p. 3.

[6]Notice of Removal, Docket Entry No. 1. Although the defendants use the term "fraudulent joinder," the Fifth Circuit instructs that "improper joinder" is the preferred term because it is more consistent with the statutory language. Smallwood v. Illinois Cent. R. Co., 385 F.3d 568, 571 n.1 (5th Cir. 2004) (en banc). The court will therefore use "improper joinder" rather than "fraudulent joinder" in this Opinion.

("Zimmer Associates") is a South Dakota corporation, and Zimmer Nagel Ltd. ("Zimmer Nagel") is a Texas corporation that is doing business as Zimmer Nagel & Associates. Plaintiffs dispute that Zimmer Nagel was improperly joined and move to remand the case to Texas state court because the parties are not diverse.[7] (The court will not address defendants' argument that Zimmer Associates was improperly joined since defendants allege that it is a South Dakota corporation and do not explain how its inclusion would defeat diversity. Furthermore, plaintiffs appear to abandon their remand argument as to Zimmer Associates.[8])

The sole issue before the court is, thus, whether Zimmer Nagel has been improperly joined. If it was improperly joined, complete

---

[7] Plaintiffs' Motion to Remand and for Costs, Docket Entry No. 15.

[8] Zimmer Associates may also be a Texas corporation, although the evidence on this is far from clear, and the parties have made no attempt to elucidate matters. Defendants allege that Zimmer Associates is now, and was at the commencement of the lawsuit, a South Dakota corporation. Defendants offer an affidavit by Gregory Nagel, the owner of Zimmer Associates, as evidentiary support. Affidavit of Gregory Nagel, ¶ 3, attached to Defendants' Response in Opposition to Motion to Remand, Docket Entry No. 22. This assertion is controverted by Plaintiff's Original Petition, which states that Zimmer Associates is a Texas corporation. Plaintiff's Original Petition, ¶ 4, attached to Defendants' Notice of Removal, Docket Entry No. 1. Plaintiffs' allegations are supported by the affidavit of plaintiff Jeanne Moses, which has attached a card from a representative of Zimmer Associates listing a Houston address. Affidavit of Jeanne Moses, Exhibit 1 to Plaintiffs' Motion to Remand and for Costs, Docket Entry No. 15. The court need not resolve this issue, however, because, as noted above, plaintiffs have abandoned their argument as to Nagel & Associates for purposes of their motion to remand.

diversity exists and the court will retain jurisdiction over the case. If it was properly joined, complete diversity does not exist and this action must be remanded to state court.

## II.  **Standard of Review**

The federal removal statute, 28 U.S.C. § 1441(a), allows for the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]"  To remove an action based on diversity jurisdiction the removing defendant must demonstrate that all of the diversity jurisdiction requirements of 28 U.S.C. § 1332 are satisfied. Smallwood v. Illinois Cent. R. Co., 385 F.3d 568, 572 (5th Cir. 2004) (en banc). Diversity jurisdiction requires complete diversity of citizenship between all plaintiffs and all defendants. Owen Equip. & Erection Co. v. Kroger, 98 S.Ct. 2396, 2402-03 (1978). Federal courts may not exercise jurisdiction over an action when any party has been improperly joined to defeat diversity jurisdiction. Smallwood, 385 F.3d at 572-73.

If the face of a complaint demonstrates that complete diversity does not exist, the removing defendant bears a heavy burden of proving that the joinder of the in-state party was improper and should thus be disregarded. Smallwood, 385 F.3d at 574. To meet this burden the claim of improper joinder must be directed toward the in-state parties rather than all defendants equally. Id. at 575. Improper joinder may be established in two

ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Id. at 573 (quoting Travis v. Irby, 326 F.3d 644, 646-47 (5th Cir. 2003)). The test for the second way is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." Id.

A district court can use two methods to resolve an improper joinder issue. The first method is to conduct a Federal Rule of Civil Procedure 12(b)(6)-type analysis looking at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Id. Rule 12(b)(6) authorizes a court, upon suitable showing, to dismiss any action or any claim within an action for failure to state a claim upon which relief can be granted.

The second method is to pierce the pleadings and conduct a summary inquiry when "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder." Id. This method is appropriate only to "identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." Id. at 573-74.

To determine the validity of an improper joinder claim all of the factual allegations must be evaluated in the light most favorable to the plaintiffs, and all contested issues of substantive fact resolved in the plaintiffs' favor. Guillory v. PPG Industries, Inc., 434 F.3d 303, 308 (5th Cir. 2005). In addition, all ambiguities in the controlling state law must be resolved in the plaintiffs' favor. Id. The court does not "determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but looks only for a possibility that the plaintiff might do so." Id. at 308-09.

### III. Analysis

Defendants allege facts not contained in Plaintiff's Original Petition that, if true, could defeat diversity. Therefore, the court will use the summary inquiry sanctioned by the Fifth Circuit to determine whether there is a reasonable basis to predict that plaintiffs could recover against the non-diverse Zimmer Nagel.

Any analysis in this case must begin, however, by noting that defendants filed what appears to be an incomplete copy of Plaintiff's Original Petition with the court in their notice of removal.[9] Plaintiff's Original Petition as filed asserts only a cause of action for negligence and ends abruptly at paragraph 21, while both plaintiffs' and defendants' pleadings address additional

---

[9]Plaintiff's Original Petition, attached to Notice of Removal, Docket Entry No. 1.

-7-

causes of action.[10]  Since defendant Zimmer Holdings, Inc.'s Answer responds to plaintiffs' claims for relief on strict products liability, breach of express or implied warranties, and loss of consortium,[11] the court concludes that defendants were served with or acquired a complete copy of Plaintiff's Original Petition but neglected to file it with this court.

Plaintiffs have not raised this procedural defect in defendants' removal, and have thus waived any motion to remand on this basis.  See 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).").  See also Covington v. Indemnity Ins. Co. of North America, 251 F.2d 930, 933 (5th Cir. 1958) (holding that failure to file a copy of all state records in removal proceedings was a procedural, not jurisdictional, defect). Although the court may, pursuant to 28 U.S.C. § 1447(b), require defendants to file in federal court the complete petition, such an order is unnecessary to resolve the pending motion because the portion of Plaintiff's Original Petition filed suffices to allow proper evaluation of the improper joinder issue.  See 28 U.S.C.

---

[10]Zimmer Holdings, Inc.'s Amended Answer to Plaintiffs' Original Petition & Request for Disclosures, Docket Entry No. 14, p. 3; Plaintiffs' Reply to Defendants' Response to Motion to Remand, Docket Entry No. 26, unnumbered p. 3.

[11]Zimmer Holdings, Inc.'s Amended Answer to Plaintiffs' Original Petition & Request for Disclosures, Docket Entry No. 14, p. 3.

§ 1447(b) (the court "may require the removing party to file with its clerk copies of all records and proceedings in such state court").

Defendants argue that Zimmer Nagel cannot be held liable under plaintiffs' theories of liability for two reasons.  First, defendants argue that Zimmer Nagel is not a "seller" under the Texas Products Liability Act, Tex. Civ. Prac. & Rem. Code Ann. §§ 82.001-82.008.  Second, defendants argue that even if Zimmer Nagel was a seller, it did not engage in any conduct that would subject it to liability.

The Texas Products Liability Act states that a "products liability action" is defined as

> any action against a manufacturer or seller for recovery of damages arising out of personal injury, death or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.

Tex. Civ. Prac. & Rem. Code. Ann. § 82.001(2). Neither plaintiffs nor defendants dispute that this case is grounded in products liability, and the court concurs that products liability law governs.  See Meritor Automotive, Inc. v. Ruan Leasing Co., 44 S.W.3d 86, 91 (Tex. 2001) ("a 'products liability action' includes not only products liability claims but also other theories of liability properly joined thereto, such as the allegation of negligence").  The sole portion of plaintiffs' products liability

action present in the truncated version of Plaintiff's Original Petition filed with the court is plaintiffs' negligence claim. But because defendants argue generally that plaintiffs cannot pursue any products liability claim, defendants' failure to file a complete copy of Plaintiff's Original Petition does not affect the court's determination.

**A.   Definition of "Seller"**

Defendants argue that Zimmer Nagel is not a "seller" within the definition of the Texas Products Liability Act (the "Act").[12] According to the Act, seller "means a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof." Tex. Civ. Prac. & Rem. Code Ann. § 82.001(3). Defendants submit an affidavit from Gregory Nagel, the owner of Zimmer Nagel, stating that Zimmer Nagel did not design, manufacture, or place the hip replacement product in the stream of commerce.[13] According to defendants, Zimmer Holdings, Inc. ("Zimmer") sells medical devices directly to hospitals.

---

[12]Defendants' Response in Opposition to Motion to Remand, Docket Entry No. 22, pp. 3-8.

[13]Affidavit of Gregory Nagel, attached to Defendants' Response in Opposition to Motion to Remand, Docket Entry No. 22. Because the court is using a summary inquiry, it may consider summary judgment-type evidence such as this affidavit. Plaintiffs' complaint that Gregory Nagel's affidavit is unsworn testimony is without merit since the affidavit contains language that comports with 28 U.S.C. § 1746.

Zimmer Nagel serves as a conduit through which hospitals and surgeons request and receive Zimmer's medical devices. Defendants argue that Zimmer Nagel is a mere service provider to Zimmer Holdings, Inc. and as a service provider that Zimmer Nagel is not subject to liability as a "seller."

Defendants cite Ames v. Ford Motor Co., 299 F.Supp.2d 678 (S.D. Tex. 2003), as support for the proposition that a service provider does not qualify as a seller under the Act.[14] In Ames the plaintiff sued several defendants for injuries arising out of an automobile accident allegedly resulting from defects in the tires used on the vehicles. Id. at 678-79. The district court granted summary judgment in favor of the customs broker defendant because it did not qualify as a seller under Texas products liability law. Ames, 229 F.Supp.2d at 679. The Ames court held that a defendant's provision of services to a product distributor, without more, did not make that defendant a seller under the Act. Id. at 680. In Ames the sole role of the defendant at issue was to assist the purchaser of the Ford vehicle with paperwork necessary to import it from Mexico. Id. at 679.

Assuming, arguendo, that service providers do not qualify as sellers under the Act, defendants' argument still fails because

---

[14]Defendants' Response in Opposition to Motion to Remand, Docket Entry No. 22, p. 5. Defendants also attempt to liken this case to King v. Centerpulse Orthopedics, Inc., 2006 WL 456478 (N.D. Ohio Feb. 24, 2006). Because King was an unpublished case applying Ohio, not Texas law, the court finds it unnecessary to address this portion of defendants' argument.

Zimmer Nagel was not a mere service provider.  Zimmer Nagel differs from the Ames defendant in one important respect.  In Ames the custom broker defendant never took physical possession or had control of the product.  Id. at 679.  Despite defendants' claims that Zimmer Nagel merely facilitated the sale, defendants concede that Zimmer Nagel may have delivered the artificial hip replacement product to the hospital at which James Moses' surgery occurred.[15]

To qualify as a seller, Texas law does not require that a defendant actually sell the product; placing it in the stream of commerce is sufficient.  Tex. Civ. Prac. & Rem. Code Ann. § 82.001(3).  See also Gomez de Hernandez v. New Texas Auto Auction Services, L.P., — S.W.3d —, 2006 WL 871010 at *4 (Tex. App. -- Corpus Christi April 6, 2006, no pet.).  If Zimmer Nagel delivered the artificial hip replacement product to the hospital, it put the product in the stream of commerce.

Although Plaintiff's Original Petition, as filed, is somewhat unclear on whether plaintiffs' products liability claims are restricted to his first Zimmer artificial hip replacement, or whether they encompass subsequent Zimmer artificial hip replacements implanted during revision surgeries, plaintiffs' briefing clarifies their claims.  Plaintiffs' suit against defendants covers the original hip replacement product as well as the subsequent

---

[15]Defendants' Response in Opposition to Motion to Remand, Docket Entry No. 22, p. 5.

Zimmer implants, including the 2004 revision surgery.[16]  Plaintiffs allege that the Zimmer artificial hip replacement product implanted during the revision surgery also failed.

Under traditional products liability principles the plaintiffs must also prove that the defendants supplied the product that caused the injury.  <u>Firestone Steel Products Co. V. Barajas</u>, 927 S.W.2d 608, 614 (Tex. 1996).  Plaintiffs have done so by producing evidence that Zimmer Nagel provided a Zimmer artificial hip replacement product used in at least one of James Moses' revision surgeries.[17]

Defendants' argument that Zimmer Nagel does not qualify as a seller under the Act faces two additional problems.  First, defendants concede that they sometimes refer to Zimmer Nagel as a

---

[16]Plaintiffs' Reply to Defendants' Response to Motion to Remand, Docket Entry No. 26, unnumbered p. 3.

[17]Affidavit of Jeanne Moses, Exhibit 1 to Plaintiffs' Motion to Remand and for Costs, Docket Entry No. 15.  The evidence adduced by plaintiffs refers to "Zimmer Nagel" without clarifying whether the artificial hip replacement product was provided by Zimmer Nagel Ltd. or Zimmer Nagel & Associates.  Neither party has addressed this issue, but the court notes that Zimmer Nagel Ltd. is doing business as Zimmer Nagel & Associates.  Defendants have not, however, provided the date that this first occurred.  The facts tend to show that Zimmer Nagel Ltd. was doing business as Zimmer Nagel & Associates when it provided the artificial hip replacements at issue, since according to defendants, Zimmer Nagel & Associates "is a South Dakota corporation that processes the payroll of Zimmer Nagel [Ltd.]," while Zimmer Nagel Ltd.'s sales representatives served "as conduits through which hospitals request and receive Zimmer's medical devices."  Defendants' Response in Opposition to Motion to Remand, Docket Entry No. 22, pp. 3-4.

"distributor" of Zimmer Holdings, Inc.'s medical devices.[18]  This makes unpersuasive defendants' argument that Zimmer Nagel is not in the business of distributing the artificial hip replacement product in the stream of commerce.

Second, although defendants admit that Zimmer Nagel representatives are sometimes present at surgery to deliver a medical device, they do not explain why a Zimmer Nagel representative has to deliver the medical device to the surgeon <u>at the surgery</u> when the usual method of delivery was simply shipping the medical devices to hospitals.[19]  Having a representative of Zimmer Nagel present at surgery creates a fact issue with respect to the representative's role during the surgery.

The court concludes that a reasonable basis exists to predict that plaintiffs can establish Zimmer Nagel was a seller under the Act.[20]  See Tex. Civ. Prac. & Rem. Code Ann. § 82.001(3).

**B.  "Innocent Seller"**

Defendants also argue that even if Zimmer Nagel is a seller, it is an "innocent seller" because Zimmer Nagel did not engage in

---

[18]Defendants' Response in Opposition to Motion to Remand, Docket Entry No. 22, p. 8.

[19]Affidavit of Gregory Nagel, ¶ 19, attached to Defendants' Response in Opposition to Motion to Remand, Docket Entry No. 22.

[20]Because this evidence is sufficient, the court need not look to plaintiffs' submission of pages printed from Zimmer Nagel's web site, which defendants contend is not proper summary judgment-type evidence.

any conduct that could result in liability under the Act.[21]  In 2003 the Texas Legislature added section 82.003, limiting a plaintiff's ability to recover against nonmanufacturing sellers to specific types of conduct set forth in the Act.  Tex. Civ. Prac. & Rem. Code Ann. § 82.003.[22]   See also Lott v. Dutchmen Mfg., Inc., 422 F.Supp.2d 750, 754 (E.D. Tex. 2006).  The statute lists several types of conduct for which a nonmanufacturing seller can be held liable, one of which is "that (A) the seller actually knew of a defect to the product at the time the seller supplied the product; and (B) the claimant's harm resulted from the defect; . . ." Id. at § 82.003(a)(6).

Plaintiff's Original Petition alleges that all defendants, including Zimmer Nagel, had received numerous reports that patients were having problems with the fracture of the metal stem portion of Zimmer's artificial hip system, and because of such reports defendants knew or should have known that its hip implantation devices were failing and causing harm to patients who had them implanted.[23]

Defendants have attempted to rebut plaintiffs' allegations by the Nagel affidavit, which states, "[n]o representative of Zimmer

---

[21]Defendants' Response, Docket Entry No. 22, pp. 8-11.

[22]Section 82.003 was added by Texas House Bill 4, and it applies to actions filed on or after July 1, 2003.  Tex. H.B. 4, 78th Leg., R.S. (2003).

[23]Plaintiff's Original Petition, ¶¶ 10-11, attached to Notice of Removal, Docket Entry No. 1.

-15-

Nagel, Ltd., or Zimmer Nagel & Associates, Inc., had knowledge of any alleged defect to the Device."[24] Plaintiffs' claims against Zimmer Nagel cover the initial Zimmer artificial hip replacement product and all of the revision surgeries using Zimmer artificial hip replacement products. Jeanne Moses' affidavit states that on the day of James Moses' July 6, 2004, surgery Zimmer Nagel's representative, Gary L. England, "told me that he had analyzed the x-rays taken of Jimmy's hip and the failed Zimmer Implant parts."[25] Moses also states that the revision put in on July 6, 2004, failed as well, and "[b]ecause of that, a special implant had to be made. A custom made implant was created by Zimmer, presumably using input from the Zimmer Nagel personnel in Houston[.]"[26] If, as Moses states, Zimmer Nagel analyzed the earlier failed implant and had input into the special implant, there is evidence that Zimmer Nagel knew that the initial Zimmer artificial hip replacement product was defective.

Therefore, even if Zimmer Nagel did not know of defects before James Moses' initial surgery using the Zimmer artificial hip replacement product, there is some evidence that it knew of alleged defects before at least one of the revision surgeries. See Grey v.

---

[24]Affidavit of Gregory Nagel, ¶ 22, attached to Defendants' Response in Opposition to Motion to Remand, Docket Entry No. 22.

[25]Affidavit of Jeanne Moses, ¶ 7, Exhibit 1 to Plaintiffs' Motion to Remand and for Costs, Docket Entry No. 15.

[26]Id. at ¶ 10.

Beverly Enterprises-Mississippi, Inc., 390 F.3d 400, 412 (5th Cir. 2004) ("the existence of even a single valid cause of action against the in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court"). Because Zimmer Nagel's knowledge of a defect with the product that caused harm to plaintiffs would be sufficient to subject Zimmer Nagel to liability under section 82.003(a)(6), defendants have failed to show that plaintiffs cannot recover for products liability.

Because defendants have not demonstrated that there is no possibility that plaintiffs can recover against Zimmer Nagel, a Texas corporation now doing business as Zimmer Associates, defendants have not carried their "heavy burden" of showing improper joinder. Because plaintiffs and all defendants are not completely diverse, the court does not have jurisdiction over this action, and the court will remand it back to state court.

**C. Costs**

Plaintiffs also move to recover their fees and costs under 28 U.S.C. § 1447(c).[27] Section 1447(c) provides that an "order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Id. While "[a]n award of costs has never been

---

[27]Plaintiffs' Motion to Remand and For Costs, Docket Entry No. 15, pp. 6-7.

predicated on a finding of bad faith or negligent or frivolous removal," Miranti v. Lee, 3 F.3d 925, 929 (5th Cir. 1993), the imposition of attorneys' fees, absent unusual circumstances, is awarded "only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 126 S.Ct. 704, 711 (2005). Although defendants' arguments for improper joinder were ultimately unsuccessful, they were not objectively unreasonable. Plaintiffs' petition treats all defendants similarly and does not attribute conduct specifically to particular defendants. It was not, therefore, unreasonable for defendants to assert that the actionable conduct was on the part of the non-diverse defendant.

## IV.  Conclusions and Order

For the reasons explained above, Plaintiffs' Motion to Remand and for Costs (Docket Entry No. 15) is **GRANTED** as to the Motion to Remand, but **DENIED** as to the Motion for Costs. This action is **REMANDED** to the 164th Judicial District Court of Harris County, Texas. The clerk will promptly deliver a copy of this Memorandum Opinion and Order of Remand to the District Clerk of Harris County, Texas.

**SIGNED** at Houston, Texas, on this the 29th day of June, 2006.

SIM LAKE
UNITED STATES DISTRICT JUDGE